## Johnson *et al.* Appellants, *v.* Richey.

Where a trustee placed trust negroes upon his own plantation, to labor with his own slaves, it was held, that the *cestui que trust* was not compelled to receive a portion of the profits as compensation; but was entitled to recover a fair hire for the use of his negroes.

APPEAL from the superior court of chancery.

Coalter for the appellants.

Hughes, *contra.*

Mr. Chief Justice SHARKEY delivered the opinion of the court, which states the facts of the case.

The appellee, Richey, filed his bill against the appellants as the representatives of Walter Leake, deceased, who was a trustee for the appellee, by the appointment of his deceased father, Daniel Richey. It is charged in the bill and admitted by the answers, that Leake took charge of the property specified in the deed of trust, immediately after Richey's death, which happened in 1813, and put the negroes on his own plantation, and carried on his farm as a partnership, and an account of the profits is exhibited with the answer, which the appellants insist should be conclusive as to the extent of the recovery, on the ground that Leake had the power to make such an appropriation of the trust property; the chancellor however decreed an account to be taken, and directed that Leake should be charged a fair hire for the negroes while he had them in possession. In general a trustee has not power to mix the trust property or money with his own, and carry on his business with the whole as a joint fund, and if Governor Leake had any such power, it must have been conferred by the particular phraseology of the deed of trust. The language of the deed, expressing the trust, is as follows, "upon trust nevertheless that the said Walter Leake and Henry G. Johnston shall so dispose of

the aforesaid eleven negro slaves, by hiring them, or otherwise, as shall seem to them best calculated to promote and secure the permanent interest and advantage of the said Daniel Richey's son, Leonard Richey, and account for the proceeds, profits and increase arising from or out of the aforesaid slaves." No doubt can be entertained but it was intended that the trustee should exercise a discretion, to some extent at least; but it may be well doubted whether the grantor has manifested such implicit confidence in the discretion of the trustee, as to release him from the operation of those rules which bear upon trustees generally. He has indicated that the negroes should be hired, giving however, the trustee power to dispose of them otherwise if he could better promote the interest of the *cestui que trust*, requiring him also to account for the profits. This is not a greater latitude than is usually given to trustees, nor indeed is it greater than is essential in trusts like this, made for the benefit of infants, who are incapable of directing in the disposition of the trust estate. The power of exercising a discretion is not to be understood as leaving the trustee to follow the dictates of his own inclination, regardless of prudence and economy, in the management of the property placed in his keeping; what one would deem discreet another might think rash, and hence it is that the law has fixed a limit, beyond which acts are to be regarded as indiscreet. It was urged for the appellants, that trustees or persons acting in a fiduciary capacity are only liable for gross neglect or fraud, and that no such thing is alleged in the bill. I am aware that such is the rule, as laid down in some of the books, and I do not mean to question the truth or propriety of it, but it is evidently subordinate in its operation to other rules which declare what shall be deemed such gross neglect or fraud as to impose the liability. Of the latter description I recognize the rule, that a trustee is not permitted to make gain for himself out of the trust funds, by involving them in trade for his own benefit, without being answerable for what would be a reasonable income. Such an investment he might make, certainly without neglect, and yet he would be liable, on the ground of a violation of good faith, and a breach of duty. On the same principle, a trustee is not permitted to mix the trust property with his own to answer the purposes of trade, without becoming responsible for

what it may reasonably be supposed to have made, and equity will not stop to inquire into the fraudulent intention of the party in so investing it, but the act itself concludes him. In the case of Brown *v.* Rickets, 4 J. C. R. 303, the chancellor has laid down the rule as universally recognized by that court, that an executor or other trustee is not to make any gain to himself from the use of the funds, or if he mingles the trust money with his own, so as to answer the purposes of credit, or if he puts money in jeopardy, by involving it in the risk of his trade, he must answer for what it may reasonably be supposed to have made. The same doctrine may be found in a note to Fonblanque, Philadelphia Ed. 474. A reasonable income from the negroes which Gov. Leake received would be a fair hire. It would certainly be difficult to arrive at accuracy in any other way. Although Gov. Leake was probably very correct in his account of the income from his plantation, yet I cannot think he adopted the correct mode of ascertaining the true income arising from the use of these negroes. Some negroes are worth much more on a farm than others, and when that is the case, and it happens on every plantation, it is of course impossible to ascertain their relative value. They were certainly worth a reasonable hire to him, or at least they should have been, and if he so managed as to make them less profitable, by working them than if they had been hired, that fact, in itself, shows an ill directed discretion in his management.

Although the account kept by Gov. Leake is doubtless correct, and probably shows as near the true amount of income derived from the use of the negroes as it was possible for him to do, yet as a matter of evidence, it is wholly defective and inconclusive. None of the testimony goes to establish in a proper manner the truth of that account. It was proven to be in the hand writing of Gov. Leake, but it does not follow that it contains the whole amount of income, or that it was intended to form a criterion for a settlement with Leonard Richey; and inasmuch as it is testimony which in most cases might be of doubtful character, it is safest to adopt a more certain mode of arriving at justice, for equity as well as law, must operate on general rules, and will not bend to exceptions.

I cannot therefore admit that Gov. Leake had a right to mingle the trust property with his own, and employ it in his business, and by doing so, incur no greater responsibility than the actual income, which he derived from the use of it, to be ascertained by the imperfect mode before us. Although he may have made the appropriation in good faith, yet it was such a one as equity will not in general tolerate, because it might lead to ruinous consequences.

The decree of the chancellor must be affirmed.

Judge WRIGHT gave no opinion.

[NOTE.—This cause was decided in 1835.]